IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ALLAN SPEAR CONSTRUCTION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CADDELL CONSTRUCTION CO. (DE),<br>LLC; TRAVELERS CASUALTY AND<br>SURETY COMPANY OF AMERICA;<br>FIDELITY AND DEPOSIT COMPANY<br>OF MARYLAND; AND ZURICH<br>AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Case No. 2:17-cv-01423-RMG<br><br><br>**ORDER AND OPINION** |

This matter is before the Court on Defendants Travelers Casualty and Surety Company of America, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company's (collectively, the "Moving Defendants") Motion for Summary Judgment (Dkt. No. 16). For the reasons set forth below, the Motion for Summary Judgment is granted.

**I.   Background**

The Court construes the facts in the light most favorable to the non-moving party. This contract dispute case arises out of the construction of the Goose Creek Nuclear Power Facility (the "Facility") located near Charleston, South Carolina. (Dkt. No. 1-1.) The United States Department of the Navy hired Defendant Caddell Construction Co. (DE), LLC ("Caddell") as general contractor to construct the Facility. In connection with construction of the Facility, Caddell obtained surety bonds, as required by statute, from the Moving Defendants to ensure payment of vendors, suppliers, and subcontractors. (Dkt. No. 1-1 ¶ 58.) Subsequently, in or about June 2016, Caddell entered into a contract with Plaintiff Allan Spear Construction, LLC ("ASC") under which ASC would provide supplemental concrete for the Facility. The instant

litigation concerns a provision of this contract, which states, "[ASC] will have a minimum of 12 consecutive weeks to provide a minimum of 20 workers over the 12 weeks period." (Dkt. No. 16-1.) ASC interprets this provision to mean that Caddell would pay ASC for a minimum of twenty laborers for a period of at least twelve weeks regardless of whether Caddell actually used the laborers. (Dkt. No. 1-1 ¶ 17.) Furthermore, ASC asserts that this provision was included so that ASC would be compensated for training, credentialing, lodging, transporting, and insuring its concrete workforce to be on hand for the Facility. (Dkt. No. 1-1 ¶ 14.) Caddell denies that it had any contractual obligation to compensate ASC for a minimum number of laborers if Caddell did not actually use them. (Dkt. No. 5 ¶¶ 17–18.)

During construction, Caddell initially used at least twenty ASC laborers and fully paid ASC for them; however, as Caddell began to meet its deadlines, it reduced its usage of ASC laborers but continued to compensate ASC for the minimum number. (Dkt. No. 1-1 ¶¶ 18–20.) Caddell then requested ASC to allow Caddell to buy out the remainder of their contract. In response, ASC asked for a proposed buy-out figure but received no response from Caddell. (Dkt. No. 1-1 ¶ 21.) Subsequently, Caddell continued to use a reduced number of ASC laborers and paid for laborers actually used, refusing to pay for the twenty-worker minimum. (Dkt. No. 1-1 ¶ 22.) As a result, ASC demanded $595,060.00 from Caddell for money allegedly owed for the minimum labor provision. (Dkt. No. 1-1 ¶ 23.)

On April 24, 2017, ASC filed suit in the Charleston County Court of Common Pleas, Civil Action No. 2017-CP-10-2017, bringing causes of action against Caddell for breach of contract, breach of contract accompanied by a fraudulent act, fraud and misrepresentation, and negligent misrepresentation, and a cause of action against all Defendants for suit on a bond. (Dkt. No. 1-1 at 5–10.) On May 31, 2017, the Defendants timely removed the case on the

grounds of federal question and diversity jurisdiction. (Dkt. No. 1.) On June 1, 2017, the Moving Defendants and Caddell filed Answers respectively. (Dkt. Nos. 4, 5.) On January 29, 2018, the Moving Defendants filed the pending Motion for Summary Judgment. On February 12, 2018, ASC filed an Affidavit of Allan Spear in response to the motion (Dkt. No. 22-1), and on February 21, 2018, the Moving Defendants filed a reply thereto (Dkt. No. 24.) The matter is now ripe for the Court's consideration.

## II. Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the burden of showing—"that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the moving party makes this showing, the opposing party must "go beyond the pleadings" to evince "specific facts showing . . . a genuine issue for trial." *Id.* at 324. A genuine issue of material fact—one "that might affect the outcome of the suit under the governing law"—exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248. The nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex*, 477 U.S. at 322. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247–48.

## III. Discussion

In support of their Motion for Summary Judgment, the Moving Defendants contend that ASC's only cause of action against them—suit on a bond—cannot be maintained because it does not fall within the parameters of the Miller Act, 40 U.S.C. §§ 3131–3134, which provides a remedy only to parties who actually furnish labor and materials rather than contract damages for unused labor. In opposition, ASC does not provide substantive arguments, claiming that it is unable to justify its opposition because the Defendants have not responded to ASC's discovery responses. In reply, the Moving Defendants attach responses to ASC's discovery requests and maintain that this is a breach of contract case between ASC and Caddell since the Miller Act does not apply.

The Miller Act applies to contracts exceeding $100,000 "for the construction, alteration, or repair of any public building or public work of the Federal Government," requiring, in pertinent part, the contractor to furnish the Government with a payment bond "with a surety satisfactory to the officer for the protection of all persons *supplying labor and material* in carrying out the work provided for in the contract for the use of each person." 40 U.S.C. § 3131(b)(2) (emphasis added). A civil action on the payment bond may be brought by a "person that *has furnished labor or material* in carrying out work provided for in a contract for which [the] payment bond is furnished . . . and that has not been paid in full[.]" 40 U.S.C. § 3133(b)(1) (emphasis added). The rationale of the Miller Act is "to give those supplying labor and materials for government contracts protection comparable to that furnished by mechanics' . . . liens where private construction is involved." *U.S. for Use of Pittsburgh-Des Moines Steel Co. v. MacDonald Constr. Co.*, 281 F. Supp. 1010, 1013 (E.D. Mo. 1968) (citing *Arthur N. Olive Co. v. United States*, 297 F.2d 70 (1st Cir. 1961)).

As the Moving Defendants point out, courts have consistently held that the surety of a bond furnished by the Miller Act may not be held liable for claims which a subcontractor may have against the prime contractor not based on labor or materials furnished. *See id.* (holding that subcontractor was not entitled to recover on surety bond for "credit extended" rather than "labor performed" or "materials furnished" because the former is not within the scope of the Miller Act); *see also U.S., to Use of Watsabaugh & Co. v. Seaboard Sur. Co.*, 26 F. Supp. 681, 688 (D. Mont. 1938) (holding that statutory predecessor to Miller Act "does not include a guarantee of profits which a contractor or subcontractor may expect to make, or a promise to make good any loss that either of them may suffer" because purpose of the payment bond is to protect persons furnishing labor and materials), *aff'd* 106 F.2d 355 (9th Cir. 1939). Here, by ASC's own allegations, Caddell paid for the laborers actually used but breached their contract by refusing to meet the twenty-laborer-minimum provision. Because ASC seeks damages arising out of an agreement to pay for twenty laborers not actually used—rather than "labor performed" or "materials furnished"—the Miller Act does not provide the remedy. Accordingly, the Court finds that ASC's only cause of action against the Moving Defendants fails as a matter of law. Therefore, the Court grants the Moving Defendants' Motion for Summary Judgment.

### IV. Conclusion

For the reasons set forth above, the Motion for Summary Judgment (Dkt. No. 16) is GRANTED. The only cause of action against Travelers Casualty and Surety Company of America, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company is dismissed.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

February 28, 2018
Charleston, South Carolina